HAMILTON BROWN SHOE COMPANY V. JAMES MILLIKEN.

FILED JUNE 5, 1901. No. 9,673.

Commissioner's opinion, Department No. 3.

1. **Evidence: DEPOSITION: USE BY OPPOSITE PARTY.** Where a deposition is taken by one party to a suit, and is not used by him, his opponent may use it in evidence.

2. ———: ———: ———: **USE, GENERAL OR RESTRICTED.** If the witness has been examined as to different transactions, such party may introduce only that part of the deposition which relates to one or more transactions; but should not be permitted to introduce a portion of his testimony on any given subject, while declining to introduce all the witness has said on that subject.

3. **Attorney and Client.** A party to a suit is not bound by any step taken by his attorney, in the latter's behalf, in another action.

4. **Pleading in Evidence.** Plaintiff commenced an action in the county court, which was afterward dismissed without prejudice; it afterward brought its action in the district court; on the trial, defendant, over plaintiff's objection, was permitted to introduce the petition, filed in the county court, in evidence. *Held*, under the facts in the case, it should have been excluded.

5. **Statement of Fact v. Expression of Opinion.** The rule that charges a party with notice of the truth in all cases where he makes positive representations of existing facts, does not apply to representations which in their nature are mere expressions of opinion.

6. **Fraud: RESCISSION OF SALE.** In an action to rescind a sale on the ground of false and fraudulent representations as to the financial condition of the vendee, a corporation: *Held*,

    (1.) **Annual Statement, Addressed to World.** That the annual statement, published by authority of the vendee, showing its debts and assets, is addressed to the world.

    (2.) **Party Has Right to Rely.** That a party dealing with the vendee has a right to rely on such statement.

    - (3.) **Source Immaterial.** That the source from which such person receives such statement is immaterial.

7. **Timely Action of Plaintiff.** In an action to rescind a sale on the ground of fraud, it is incumbent on the plaintiff to show that within a reasonable time from the discovery of the fraud he, in some way, indicated to the vendee his intention to rescind; the bringing of an action, or any other act clearly indicative of such intention, and brought to the knowledge of the vendee, is sufficient.

ERROR from the district court for Dodge county. Tried below before MARSHALL, J. *Reversed.*

*John S. Bishop* and *Conrad Hollenbeck,* for plaintiff in error.

*Loomis & Abbott, contra.*

ALBERT, C.

On November 6, 1894, the Hamilton Brown Shoe Company of St. Louis, Missouri, plaintiff, sold and delivered a bill of goods to the Goldgraber Dry Goods & Clothing Company, of Fremont. Both were corporations. On December 21, 1894, the latter failed. Its store was closed under orders of attachment and chattel mortgages and its stock seized and held by the sheriff of Dodge county, defendant, by virtue of said orders and mortgages. Thereupon the plaintiff elected to rescind its contract of sale, on the ground of fraud, and on the 17th day of September, 1895, brought an action in replevin to recover the goods sold and delivered. No bond was given and the case proceeded as one for damages. A trial was had to a jury, which resulted in a verdict for the defendant. Judgment was rendered accordingly, and the plaintiff brings error to this court.

1. One of the grounds relied on by the plaintiff for a reversal is, that the court erred in excluding a part of the deposition of one Goldgraber. The deposition had been taken by the defendant, and the offer of the plaintiff was a portion of the cross-examination of the witness. Upon defendant's objection thereto, the court held that plaintiff might offer the entire deposition and then read such portions as it might see fit. The plaintiff declined to act on this suggestion, and defendant's objection was sustained. We are unable from the record to determine the correctness of this ruling. The rule appears to be that where a deposition, taken by one party to a suit, is not

used by him, his opponent may use it in evidence; and if the witness has been examined as to different transactions, such party may introduce only that part which relates to one or more of such transactions; but he should not be permitted to introduce a portion of his testimony on any given subject, while declining to introduce all the witness had said on that subject. *Citizens Bank v. Rhutasel*, 25 N. W. Rep. [Ia.], 261. Only that portion of the deposition offered is before us; consequently we are unable to determine whether the plaintiff brought himself within the rule just stated.

2. It is next argued that the court erred in excluding the answer of George L. Loomis and John W. C. Abbott in another action, which plaintiff offered as evidence in this case. We confess our inability to discover upon what theory it can be claimed that this evidence was admissible. Neither Loomis nor Abbott are parties to this suit; neither does it appear that either of them is in any manner interested in the result, save the former in the capacity of attorney. We can not believe it will be seriously contended that a client is bound by any steps taken by his attorney, in his own behalf, in another action. The evidence was properly excluded.

3. Prior to the commencement of this action, the plaintiff filed a petition in the county court of Dodge county against the defendant, seeking to recover the same goods, on the same state of facts as in this case. Subsequently, and before the commencement of this action, plaintiff dismissed its case in the county court. On the trial of this action the petition filed in the county court was received in evidence on behalf of the defendant, over plaintiff's objection. We are unable to see how the introduction of that petition in evidence served any legitimate purpose. The tendency of such evidence is to give rise to speculation and conjecture as to the result of the former action and the effect thereof on the present, and to divert the minds of the jury from the real issues. While its admission might not be sufficient, in itself, to justify a re-

versal, in our opinion the evidence should have been excluded.

4. The main question in this case arises from the instructions of the court relative to the alleged false and fraudulent representations of the vendee. It sufficiently appears that representations as to the financial condition of the vendee were made by its president direct to the agent of the plaintiff in 1893, and that in October, 1894, a representative of a commercial agency called on the vendee for a report which its president refused to give, whereupon its secretary gave him a copy of its annual statement published in March, 1894, in pursuance of the law governing corporations. The instruction under consideration is as follows:

"8. The jury are instructed that in order that representations may be regarded as fraudulent, so as to be ground for rescinding the contract of sale, they must be both false and fraudulently made. If they are made with an honest belief of their truth, at the time they are made, they are not fraudulent; but if made recklessly, and without any knowledge or information on the subject, calculated to induce a belief of their truthfulness, and they prove to be untrue, or if made knowing them to be false at the time, then they are fraudulent within the meaning of the law."

It will be observed that, by the foregoing, the jury were instructed, in effect, that if such statements were made with an honest belief in their truth, they were not fraudulent, even though false, unless made recklessly and without any knowledge or information on the subject calculated to induce a belief of their truthfulness. The plaintiff contends that these instructions ignore an important rule, applicable to cases of this kind, and one not covered by any part of the charge, and that is, the rule that charges a party with notice of the truth in all cases where he makes positive representations of existing facts. A clear statement of the rule is to be found in *Foley v. Holtry*, 43 Nebr., 133. But that rule is not univer-

sal in its application, and can not be extended to representations which, in their nature, are mere expression of opinion. The falsity of the representations under consideration lies in the alleged excessive valuation placed on the assets of the vendee. The valuation placed thereon by the vendee was merely the expression of an opinion on a point on which no two minds would agree, and upon which it is not to be presumed the parties making the representations assumed to have accurate knowledge. *Cohn v. Broadhead*, 51 Nebr., 834, and cases there cited. That one of the representations consisted of the published annual statement of the vendee, as a corporation, does not change the rule. It is true the annual statement contained an estimate of the value of the vendee's assets, but the law does not require it; it requires only a list of its debts. But if it did, it could require of it nothing more than that the valuation should represent the honest estimate of those making the statement, based upon sufficient knowledge of the facts to induce them to believe the estimate a fair one. In our opinion the instruction fairly states the law applicable to the facts.

5. Relative to the statement furnished the representative of the commercial agency, the court instructed the jury as follows:

"9. The jury are instructed that if from the evidence they believe that the report made and published by said Goldgraber Company in March 1894, as to its financial or property condition, and that this published statement was exhibited by the secretary of the said Company to the travelling agent of the Commercial Agency of R. G. Dun & Co., merely as information to said agent of the financial condition of said Goldgraber Company, and not as a representation by said company for the purpose of obtaining credit, then the said statement could not be considered by the jury, if untrue, as made to the plaintiff for the purpose of obtaining credit, especially if from the evidence the jury believe that at that time Joseph Goldgraber was General Manager of said company, and that

he refused to make any statement or representation as to his company's financial condition. Information gained and published by the R. G. Dun & Co.'s commercial agency as to the financial condition of the Goldgraber Company, when made without the authority of that company for the purpose of obtaining credit although obtained through the medium of its secretary, could and would not bind the Goldgraber Company as a representation by it to obtain credit, nor could it operate in that case as a fraud upon the plaintiff, even though the plaintiff or its agents had seen such published statement of the R. G. Dun & Co. To make such report or statement binding upon the Goldgraber Company it must have been published by that company under such circumstances as to show that it was made to procure credit, and be made by some officer or agent of said company authorized or having the authority to make such report or statement for that purpose, and it must appear from the evidence that such statement was false at the time to make it fraudulent."

The correctness of this instruction is squarely called in question by the record. It appears from the evidence that about October, 1894, the representative of a commercial agency asked the president of the vendee for a report on its financial condition. The president refused to give it or to make any statement in regard thereto; whereupon, the secretary furnished such representative with a copy of the annual statement of vendee, published the preceding March, showing a list of its debts and assets, the latter being about $20,000 in excess of the former. The testimony of the secretary is to the effect that he furnished such copy for the information of the said representative only, for the purpose of preventing an adverse report, and not for the purpose of obtaining credit.

In our opinion the instruction is bad. It ignores the fact that the statement furnished by the secretary, and upon which plaintiff claims to have relied, was a public

statement, made and published by the governing officers of the corporation. It was intended to inform the public of the financial condition of the vendee. There can be but one purpose in such publication, and that is, that parties dealing with the vendee could do so with a knowledge of its financial condition. It was addressed to the world, and to all to whom it came, by whatever means it reached them, it was the deliberate statement of the vendee of its financial condition, in March, 1894, when it was made and published. The authority of the secretary to furnish a copy of such statement, and the purpose for which he furnished it to such representative, are wholly immaterial, except that, if acting within the scope of his authority, his reiteration of the statement would operate as a reiteration thereof by the vendee. The plaintiff having been informed of the contents of the annual statement, and, according to its theory, supported by some evidence, at least, having parted with its goods on the strength thereof, the sole question is, whether such annual statement was false and fraudulent.

6. The plaintiff complains of an instruction which, it alleges, required it to show that it had given notice of its intention to rescind. The instruction on this point is somewhat obscure, but, fairly construed, it charges the jury that it was incumbent on the plaintiff, in some way or another and within a reasonable time from the discovery of the alleged fraud, to indicate to the vendee its intention to rescind the sale. The court might have gone farther and charged the jury that the bringing of an action to recover the goods, or any other act, clearly indicative of its intention to rescind, and brought to the knowledge of the vendee, would be sufficient. But if the plaintiff desired the rule to be stated more fully, it should have tendered an instruction covering the omission.

Many other errors are assigned and argued at length, but as they involve questions already discussed or those not likely to arise in another trial of the case, we shall not consider them further. It is recommended that the

judgment of the district court be reversed, and the cause remanded for further proceedings according to law.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.